**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. <u>10-cv-_____</u>

RANDY S. GOLDENHERSH, *pro se*

              Plaintiff,

v.

AURORA LOAN SERVICES LLC, a Delaware
limited liability company; DALE & DECKER, LLC;
HOLLY DECKER; TONI M.N. DALE; JAMIE G. SILER, ESQ. and
ANA MARIA PETERS-RUDDICK,
as the Public Trustee of Arapahoe County,
Colorado,

              Defendants.

_____

**COMPLAINT**
_____

Randy S. Goldenhersh, plaintiff *pro se*, states his Complaint for emergency injunctive relief to prevent wrongful foreclosure of his home for the last 22 years.

Plaintiff seeks damages, exemplary damages, and to quiet title for wrongful foreclosure based on "Defendants", (a defined term which excludes the Public Trustee) material misrepresentations and failure to provide information required by agreement and by law to plaintiff, the Pubic Trustee, to the Rule 120 Court.  In violation of the Fair Debt Collection Practices Act,  and numerous other federal laws Defendants acted together to use defective endorsements including one invalidly placed on a separate page ("Allonge") which Defendants knew, or should have known, to be defective to convey interests to Defendant ALS.

**SUMMARY**

Defendants made false and misleading representations to plaintiff, the Public Trustee and Rule 120 Court.  Defendants breached a settlement agreement dated March 24, 2010 ("Settlement Agreement").  The Settlement Agreement was procured by Defendants' fraud in the inducement

and bad faith in order to procure a stipulated dismissal of plaintiff's prior lawsuit in this Court and dismissal of certain claims for Defendants' actions <u>prior</u> to the Settlement Agreement.

The Settlement Agreement is void or voidable and the stipulated dismissal is subject to being overturned by the Court.   This Complaint is further based on Defendants'  pre Settlement Agreement violations of numerous other and state and federal and statutes and law in the formation and collection of the purported note and deed of trust.   These include violation of  fair debt collection practices ("FDCPA"), truth in lending ("TILA), real estate settlement procedures act ("RESPA"), Home Ownership Equity Protection Act ("HOEPA"), Fair Credit Reporting Act, Racketeer Influenced and Corrupt Organizations Act ("RICO"), Colorado Organized Crime Control Act (COCCA), negligent and intentional misrepresentations, and breaches of contract, all to plaintiff's detriment and damage:

## JURISDICTION

1. The Court has jurisdiction under 28 U.S.C. 1331 because plaintiff asserts claims against defendants under the federal Fair Debt Collection Practices Act, federal Truth in Lending Act and other federal statutes.

2. The Court has supplemental jurisdiction over plaintiff's state-law claims under 28 U.S.C. 1446 because the state and federal claims arise from the same case or controversy.

## PARTIES AND BACKGROUND

3. Randy S. Goldenhersh ("plaintiff"), is an individual who owns and has resided for 22 years at 6500 E. Prentice Avenue the legal description of which is: The N 1/2 of Tract 40, Clark Colony No.3, Subdivision of Section 17, Township 5 South Range 67 West, Except the Westerly 5 Feet Thereof, County of Arapahoe, State of Colorado (the "Property.")

4. Defendant Aurora Loan Service, LLC ("ALS") is a Delaware LLC whose principal place of business is 10350 Park Meadows Drive, Littleton, Arapahoe County, Colorado.   ALS is not named or identified in the Note or Deed of Trust.   ALS is the most recent of the entities which after a purported loan closing claimed the right to receive loan payments.

5. Defendants Holly Decker and Toni Dale are attorneys and partners in defendant Dale & Decker LLC (collectively "Dale & Decker") a law firm whose principal place of business is 2 Inverness Drive East Suite 105, Englewood, Arapahoe County, Colorado.

6. AL S, Dale & Decker, and the Public Trustee signed a settlement agreement on March 24, 2010 ("Settlement Agreement") and resulting in a stipulated dismissal with prejudice of plaintiff's initial state court complaint which contested Defendants' original defective foreclosure attempt. That case had been removed to federal court. The Settlement Agreement and Dismissal did not release or dismiss Defendants' prospective actions.

7. Jamie Siler is an attorney in private practice who represented AL S and Dale & Decker in the litigation regarding their previous defective foreclosure attempt and orchestrated the negotiations leading to the Settlement Agreement and activities thereafter ("Mr. Siler"). Mr. Siler was responsible to provide plaintiff with documents related to chain of title required by the Settlement Agreement and required by law. Mr. Siler was in-house counsel for ALS at the time of the purported loan closing and at other times material to ALS' actions that violated plaintiff's rights under federal and Colorado law. Mr. Siler's principal place of business is 410 17th Street, Suite 2400, Denver, Colorado.

8. The Settlement Agreement required Defendants to follow a specified timetable to dismiss the previous defective foreclosure, provide the documents Mr. Siler assured plaintiff to exist, showing the chain of title to ALS as owner and holder, to file a new foreclosure that complied with CRS 38-38-100.3 et. seq. and Rule 120.

9. Defendants failed to do so and again made false, misleading representations to plaintiff, the Public Trustee in their Notice of Election and Demand ("NED") and in their Verified Motion to Rule 120 Court as to ALS' rights as owner, holder and real party in interest with standing to foreclose.

10. Defendants purported to exercise a power of sale under a note ("Note") and deed of trust "Deed of Trust" both dated July 14, 2006.  These documents were signed at a "purported" loan closing on July 24, 2006.   The Note and Deed of Trust identified LoanCity ("Sham Lender") as the lender.

*11.* Mortgage Electronic Registration Systems, Inc., ("MERS") although not a foreclosing entity or named defendant, was identified in the Deed of Trust ("DOT") as " beneficiary" under the security instrument…"

12. AL S, Dale & Decker, and Mr. Siler (collectively "Defendants") are "debt collectors" as defined in 15 U.S.C. 1692e and under the laws of Colorado because they regularly use instrumentalities of interstate commerce and the mail, in attempting to collect, directly or indirectly debts owed or due or asserted to be owed or due others, such as, actual lenders, mortgagors and certificate holders under pooling and servicing agreements.

13. Ana Marie Peters-Ruddick is Public Trustee of Arapahoe County, Colorado is a nominal defendant in her capacity to perform ministerial actions related to foreclosures (hereinafter referred to as the "Public Trustee".)

**FIRST CLAIM-DEFENDANTS VIOLATED THE SETTLEMENT AGREEMENT AND THE LAW BY INVALID ENDORSEMENTS OR ASSIGNMENTS TO MISREPRESENT ALS AS OWNER AND HOLDER OF THE NOTE AND DEED OF TRUST**

14. No valid endorsement has been provided that evidences AL S to be a real party in interest with standing.

15. Defendants, experts in notes and endorsements, rely on defective endorsements and a manufactured defective endorsement on a separate page ("Allonge") purportedly assigning

rights to AL S. Defendants use these to represent to the Public Trustee, the Rule 120 Court and plaintiff that ALS is owner, holder, and a real party in interest.

16. One endorsement on the Note is from LoanCity, the original purported lender to Residential Funding Corporation ("RFC").

17. The second endorsement is from RFC to" Deutsche Bank Americas as Trustee" ("DB"). There is no indication as to what, if any, entity is the assignee for which DB is trustee.

18. The next endorsement is the "Allonge", typed on a separate page despite availability of nearly an entire page on the Note itself which has only the two previous small stamped endorsements.

19. The Allonge fails as an endorsement. It does not to meet the essential requirement that an allonge be on the note itself if there is any space at all.  In a disingenuous attempt to justify a separate sheet of paper, the typing and spacing of Allonge was made as large as possible, but these efforts do not work.  Even the oversized Allonge could fit on the Note.

20. In another fatal defect the Allonge refers to a "Note Number 0021706007" which is completely different from that printed on the Note itself which is identified as "Note: 1001894811."

21. The Allonge is signed illegibly by an unidentified individual purporting to be acting for DB. The signer's title which is hand printed and includes an unexplained deletion is shown as "Limited Signing Authority".  There is no legible typed or printed name. There are no indicia of authority. There are no supporting documents evidencing a delegation, no notarization even as to the identity of the individual, and no corporate formalities whatsoever in support.  The unusual circumstances where an allonge is permitted, is typically only  where there is  no space whatsoever available for endorsement on the note itelf..  Because of the possibility of mistake and fraud it is

essential to physically affix the allonge  and use   precise formalities such as delegation of authority and notarization to link the allonge to the note.

22. In an attempt to gloss over the many defects in the chain of title, Defendants use three lines to describe the assigning trustee (again with no indication of any trust ) and include yet another unidentified entity, Bankers Trust.

23. Despite any valid documentation Defendants' represented or caused to be represented to the Public Trustee that AL S is a holder.

**SECOND CLAIM-DEFENDANTS MADE MATERIAL MISREPRESENTATIONS TO THE  PUBLIC TRUSTEE**

24. Defendants made false representations to the Public Trustee in the NED that ALS was holder despite knowing that AL S lacked valid endorsements or assignments of the Note and Deed of Trust.

**THIRD  CLAIM-DEFENDANTS  MADE  MATERIAL  REPRESENTATIONS  TO  THE RULE 12O COURT**

25. Defendants made false representations in the Verified Motion to the Rule 120 Court that ALS was holder despite knowing that ALS lacked valid endorsements or assignments of the Note and Deed of Trust.

**FOURTH *CLAIM-  DEFENDANTS  BREACHED THE SETTLEMENT AGREEMENT***

26.  The Settlement Agreement did not waive plaintiff's rights going forward and required Defendants going forward to adhere to a schedule to dismiss their original foreclosure,

provide plaintiff with the chain of title and endorsements proving ALS' ownership of the Note and Deed of Trust and file a valid non-judicial foreclosure in compliance with Colorado foreclosure law and CRCP Rule 120.

27. Defendants failed to dismiss their original foreclosure within 10 days of signing the Settlement Agreement.

28. Defendants breached the Settlement Agreement which required Defendants to refrain from foreclosure until after providing plaintiff the evidence that AL S' is owner and holder. In their haste to railroad the process, Defendant's filed their NED on April 7, 2010 but failed to provide plaintiff even the "Allonge" defectively "manufactured" on a separate page via email until April 14, 2010. Defendants have never provided valid endorsements.

29. Ignoring the dates, failing to provide  lack of valid endorsements and assignments to ALS and general disregard of the Settlement Agreement are significant indication of Defendants' arrogant disregard for agreements, laws and the willingness to violate plaintiff's rights and others similarly situated and ill placed to evaluate and contest their actions.

**FIFTH CLAIM--VIOLATION OF DUE PROCESS**

30. Plaintiff incorporates and realleges paragraphs 1-29.

31. Defendant's failure to have the required authority for the NED and for the Rule 120 Hearing denied plaintiff due process under the Colorado and US Constitutions.

32. The review of Defendants' certifications and verifications by the Public Trustee and the Rule 120 Court are limited reviews as prescribed by statute and case law.

33. Plaintiff's right under Colorado law to bring this separate action for relief does not remedy the due process violation created by Defendants' defective Rule 120 Hearing because the short time frame of a Public Trustee foreclosure forces plaintiff to seek injunctive relief which has additional requirements and showings than do the issues raised about the underlying foreclosure case.

34. Defendants' actions and inactions created defects so material to the actions of the Public Trustee and the Rule 120 hearing that even if Defendants could now, or cynically plan to, correct them just prior to the Scheduled Sale, the procedure was so defective that the Sale should be enjoined or vacated to afford plaintiff his statutory and due process rights.

## SIXTH CLAIM-THE SETTLEMENT AGREEMENT IS VOID OR IS VOIDABLE BY PLAINTIFF

35. Defendants' conduct after the Settlement Agreement also give insight to their bad faith, fraud in the inducement, lack of intention to proceed with a valid foreclosure, and pattern of abuse of plaintiff's consumer rights leading to the Settlement Agreement and Dismissal of the previous complaint for defective foreclosure.

36. Defendants' actions included bad faith, fraud in the inducement and tactics.  These include failure to provide plaintiff a significantly revised draft settlement satisfactory to Mr. Siler and plaintiff until just before a Court status conference to schedule a hearing for preliminary injunction in an illegal attempt to gain plaintiff's acquiescence to Defendants' illegal actions in the transaction resulting in the purported Note and Deed of Trust and the initial defective collection and foreclosure attempt  Defendants' actions render the Settlement Agreement void or voidable.

## SEVENTH CLAIM-THE SETTLEMENT AGREEMENT IS ILLEGAL AND VOID
### *AB INITIO*

37. *The Settlement Agreement purports to secure plaintiff's waiver of Defendants' violation of the law prior to the Settlement Agreement* including the Federal and Colorado statutes governing  fair debt collection practices ("FDCPA"), truth in lending ("TILA"), federal real estate settlement procedures act ("RESPA"), Home Ownership Equity Protection Act ("HOEPA"), Fair Credit Reporting Act, civil conspiracy. Racketeer Influenced and Corrupt Organizations Act ("RICO"), Colorado Corrupt Organizations Control Act ("COCCA'), as well as to  negligent and intentional misrepresentations, torts and breaches of contract, all to plaintiff's detriment and damage as further set forth in plaintiff's Complaint *and is, therefore, void or can be voided at  plaintiffs option.*

## EIGHTH CLAIM-STIPULATED DISMISSAL PROCURED BY FRAUD

38. To the extent the Dismissal is overturned, he Complaint is further based on Defendants' violations of numerous other and state and federal and statutes and law including the Federal and Colorado statutes governing fair debt collection practices ("FDCPA") prior to the Settlement Agreement.

## NINTH CLAIM--OTHER VIOLATIONS OF THE COLORADO AND FEDERAL FDCPA

### ALS'  Mishandling and Lack of Authority to Receive Payments

39. Plaintiff incorporates and realleges paragraphs 1-41.

40. Plaintiff had made all payments in the amounts specified by ALS and its predecessor collectors. Plaintiff believes that the ALS' records are completely inaccurate as is the representation of the outstanding balance of the Note, if any.

41. ALS failed to accurately calculate and record payments and their timing.  Plaintiff contacted ALS in unsuccessful attempts to try to correct their inaccurate recording which created incorrect late fees and significantly damaged plaintiff's credit.

42. Plaintiff repeatedly asked to contact the owner of the Note and Deed of Trust.  In denying plaintiff's requests every ALS employee contacted said that ALS did not own the Note or Deed of Trust and that these were owned by a "private investor".

43. Plaintiff repeatedly asked and was refused evidence of ALS' authority to receive payments and was refused the identity of the "private investor" that was his "lender".   All of the ALS employees said that is was ALS' policy not to disclose this information.

44. ALS' refusal to provide evidence of their authority or identify plaintiff's lender gave plaintiff reasonable belief that ALS did not have such authority or right and that his payments had been and continued at risk of being improperly diverted from the rightful recipient.

45. It became clear that further attempts to get information from ALS were futile and that ALS did not have or was withholding and misrepresenting information to conceal the nature of the transaction into which plaintiff had been induced.

46. In order for ALS to have such rights or to be a party in interest and maintain legal standing in connection with the subject loan transaction they are required to have evidence of the chain of assignments and transfers showing their entitlement.

47.  Defendants refused to do this despite numerous requests, leading plaintiff to reasonably conclude that the Defendants do not have such evidence and entitlement or are intentionally withholding the information.


**TENTH CLAIM- DEFENDANTS'PATTERN AND PRACTICE OF FILING IMPROPER FORECLOSURES**

48. Plaintiff incorporates and realleges paragraphs 1-5O.


49.  This attempted foreclosure is one of over one thousand filed by ALS and hundreds by Dale & Decker in Colorado.


50. This  pattern and practice of filing foreclosure actions in state and federal courts without the requisite legal title, while falsely stating that it had such title constitutes a 'false, deceptive or misleading representation or means in connection with the collection of a debt in violation of the FDCPA 15U.S.C. 1692e.


**ELEVENTH CLAIM--VIOLATION OF THE FEDERAL TRUTH IN LENDING ACT ("TILA") and UCC SECURED TRANSACTIONS**

**Bait and Switch Tactics**

51. Plaintiff incorporates and realleges paragraphs1-48.


*52.* The Sham Lender violated TILA. ALS participated in, knew or should have known of Sham Lender's violations. To the extent that ALS purports to accede to those rights Defendants is on notice of and accedes to these violations.


53. Sham Lender continually delayed the closing promising almost daily over a period of weeks that completion of paperwork and the closing was imminent.   During this process Sham

Lender said the rate could not be fixed and raised the initially represented rate.   Sham Lender further represented to plaintiff that the above market rate loan for plaintiff's then excellent-very good credit rating could be refinanced with no prepayment penalty.

54. At the very instant of the long negligently or intentionally delayed alleged closing, Loan Seller demanded in a "bait and switch" ploy that plaintiff sign a rider which required a large prepayment penalty if the loan were to be refinanced within three years which made it economically unfeasible to refinance.

55. The inducement was illegal and the amount of the prepayment penalty itself was illegal under TILA rules governing prepayment penalties thus forcing plaintiff into excessive payments to his damage.

### The Sham Lender "Shell Game" Illegal Misrepresentations

56. Plaintiff incorporates and realleges paragraphs1-53.

57. Sham Lender, upon whose rights Defendants purport to rely, was engaged in a "shell game" scheme which misrepresented the true lender, the nature of the transaction, the interest rate, fees and the true source of funds.

58. Sham Lender misrepresented to plaintiff, and Defendants knew or should have known, that the Sham Lender concealed the fact that it was a mere sham vehicle to funnel funds from an intricate illegal scheme of pooled and securitized funds, collateralized mortgage obligations, transfers, pooling of loans and mortgages, cross collateralization of properties, special purpose vehicles ("SPVs"), and tax avoidance Real Estate Mortgage Investment Conduits ("REMICs").

59. It was part of a series of schemes to generate illegal undisclosed profits and fees by misuse of plaintiff's loan, credit and property for the participants including Sham Lender and Defendants.

60. Sham Lender was named as the Payee on the Note and MERS the beneficiary under the Deed of Trust executed at the time of the alleged "closing" of the "loan transaction." which were recorded in the Arapahoe county records

61. Notwithstanding the above, and without the knowledge of the plaintiff, Sham Lender had entered into assignment and assumption agreements with one or more parties and pooling and service agreements with one or more parties including but not limited to a mortgage aggregator prior to or contemporaneously with the "closing" of the subject "loan transaction."

62. Under the terms of plaintiff's Note and Deed of Trust Sham Lender received a sum of money probably on receiving an application for the loan equal to the gross amount of the loan sought by Plaintiff. Contrary to the documents presented before and during the "closing" of the "loan transaction" Sham Lender was neither the source of funding nor the lender nor the mortgagee or beneficiary of the Deed of Trust.

63. Thus at the time of recording, the source of funding Sham Lender was a different entity than the nominal mortgagee or beneficiary under the Deed of Trust which other than an electronic filing system MERS was neither named nor disclosed named in any fashion

64. The security for the "loan" thus secured an obligation that had been paid in full by a third party. Said third party(ies) was or may have been acting as a financial institution or "lender" which may not have been chartered or registered to do so despite federal and Colorado laws and regulations to the contrary.

65. Before or contemporaneously with the "closing" plaintiff's Note was placed into one or more pool of assets that would be "securitized' and sold one or more times.

66. Thus plaintiff reasonably believes that his payments have not been forwarded to the holder in due course of the Note nor to any authorized entity. Defendants have failed to provide such evidence despite plaintiff's requests.

67. If there is a holder in due course of the Plaintiff's note arising from the subject "loan transaction" it may be investors who purchased said securities (certificates). Some of said securities are held by the original purchasers thereof, others were sold at weekly auction markets, others were paid by re-sales of property that were" secured", others were paid from prepayments, others were paid by sale at full or partial price to an investment bank that originated the entire transaction, some of which might be held by the Federal Reserve as non-recourse collateral, and others might have been paid by one or more of the insurance, credit default swaps, cross guarantees or cross collateralization of the segment of the pool that secured the relevant investor(s) who owned certificates backed by a pool of assets that included the subject "loan transaction. "

68. The Defendants have not produced evidence of any knowledge whether the possible holders in due course, if any, have been paid in whole or in part.  The Defendants seek to enforce loan documents for which Sham Lender and ALS have already been paid in full plus illegal fees for participating in an illegal scheme.

69. These Defendants seek to further overreach in this illegal scheme by demanding ownership of the property in addition to the receipt of payment in full long before any delinquency or default even allegedly occurred

70. Accordingly Plaintiff is in jeopardy that the true holder(s) and potentially dozens or even thousands of third parties could come forward claiming an unsatisfied interest in the promissory note and may or may not be subject to Plaintiffs various affirmative defenses and counter claims.

71. Colorado statutes providing for certain indemnifications do not protect plaintiff from improper sale of his unique residence nor assure plaintiff that ALS and its owner Lehman Brothers already once rescued from bankruptcy as part of the TARP bailout would be able to indemnify plaintiff in light of the vast number of victims of ALS and sham transactions.

**VIOLATION OF TILA REGULATION Z and RESPA**

72. Plaintiff incorporates and realleges paragraphs1-69.

73. ALS and its predecessors upon whose rights ALS seeks to profit,  failed to provide to plaintiff the preliminary disclosures required by the Truth-In-Lending Act pursuant to 12 CFR (also known as and referred to herein as "Regulation Z) sec. 226.17 and 18, and failed to provide the preliminary disclosures required by the Real Estate Settlement Procedures Act ("RESPA ".)

74. ALS' predecessors also intentionally failed and/or refused to provide plaintiff with various disclosures which would have indicated to the plaintiff that the consumer credit contract entered into was void, illegal, and predatory in nature due in part to the fact that the final TILA did not provide the proper disclosures of the actual contractually due amounts and rates.

75. ALS' predecessors failed to include and disclose certain charges in the finance charge shown on the TILA statement, which charges were imposed on plaintiff incident to the extension of credit to the Plaintiff and were required to be disclosed pursuant to 15 USC sec. 1605 and Regulation Z 71. sec. 226.4, thus resulting in an improper disclosure of finance charges in violation of 15 USC sec. 1601 et seq. Regulation Z sec. 226.18(d).

76. Such undisclosed charges include a sum identified on the Settlement Statement listing the amount financed which is different from the sum listed on the original Note. By calculating the annual percentage rate ("APR") based upon improperly calculated and disclosed amounts, Defendants are in violation of 15 USC sec. 1601 et seq., Regulation Z sec.226.l8(c), 18(d), and 22.

77. The "Amount Financed" within the TILA is also understated which is a material violation of 12CFR sec. 226.17 and 18, in addition to 15USC sec. 1602(u), as the "Amount Financed" must be completely accurate with no tolerance.

78. Defendants' failure to provide the required disclosures provides Plaintiff with the right to rescind the transaction. Since there never was an actual loan closing the time limit for rescission has not expired.  Even if the time limit for rescission was found to have expired plaintiff is still entitled to damages for the violation.

**Plaintiff has Overpaid in Interest**

79. Plaintiff incorporates and realleges paragraphs1-81.

80. At all times relevant hereto, Sham Lender and ALS regularly extended consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four (4) installments and was initially payable to the person the subject of the transaction, rendering ALS a creditor within the meaning of the Truth-In-Lending Act, 15 U.S.C. sec. 1602(f) and Regulation Z sec. 226.2

81. ALS engaged in a pattern and practice of defrauding Plaintiff in that, during ALS' receipt of payments ALS failed to properly credit payments made; incorrectly calculated interest on the accounts; and have failed to accurately debit fees.

82. At all times material, ALS knew or should have known that accounts were not accurate but that plaintiff would and did make further payments based on ALS' inaccurate accounts.

83. As a direct and proximate result of ALS' actions, Plaintiff was cause to overpay interest to his damage.

**Failure to disclose the IOAF and YSP**

84. Plaintiff incorporates and realleges paragraphs1-94.

85. Sham Lender failed and/or refused and ALS improperly benefited from the failure to provide a HUD-l Settlement Statement at the closing which reflected the true cost of the consumer credit transaction.

86. There was a failure to provide an accurate accounting or Itemization of Amount Financed ("IOAF") and no disclosure of a Yield Spread Premium ("YSP"), which is required to be disclosed by the Truth-In-Lending Act, and thus no disclosure of the true cost of the loan.

87. As a direct and proximate result of these failures to disclose as required by TILA, Sham Lender received and ALS benefited from an YSP in a substantial amount without preliminary disclosure, which is a. per se, violation of 12 CFR sec. 226.4(a). 226.17 and 18(d) and (c)(I)(i)(i).  The YSP raised the interest rate which was completely unknown to or approved by plaintiff.

88. ALS used amounts it knew to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.  ALS' violations were all material in nature under the Truth-In-Lending Act and have damaged plaintiff.

**Defendants were obligated to provide Plaintiff   all legally required disclosures pursuant to TILA and RESPA both before and after the closing.**

89. Plaintiff incorporates and realleges paragraphs1-99.

90. On information and belief and given that the consumer credit transaction was a transitory transaction with multiple assignments as part of an aggregation and the creation of a REMIC tranche itself a part of a predetermined and identifiable CMO, Sham Lender and ALS shared in the illegal proceeds of the transaction; conspired to defraud the plaintiff out of the proceeds of the loan; acted in concert to wrongfully deprive the plaintiff of his residence; acted in concert and conspiracy to essentially steal the Plaintiff home and/or convert the Plaintiff home without providing Plaintiff reasonably equivalent value in exchange; and conducted an illegal enterprise within the meaning of the RICO statutes

91. On information and belief and given the volume of residential loan transactions solicited and processed by the Defendants, the Defendants have engaged in two or more instances of racketeering activity involving different victims but utilizing the same method, means, mode, operation, and enterprise with the same intended result.

**TWELFTH CLAIM-- VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT**

92. Plaintiff incorporates and realleges paragraphs1-94.

93.  The Home Ownership Equity Protection Act ("HOEPA") which is codified at 15 USC see. 1639 et seq. with the intention of protecting homeowners from predatory lending practices targeted at vulnerable consumers. HOEPA requires lenders to make certain defined disclosures and prohibits certain terns from being included in home loans. In the event of noncompliance, HOEPA imposes civil liability for rescission and statutory and actual damages. Plaintiff is a "consumer" and ALS is a "creditor" as defined by HOEPA. In the mortgage loan transaction at issue here, Plaintiff were required to pay excessive fees, expenses, and costs which exceeded more than 10% of the amount financed. Pursuant to HOEPA and specifically 15 USC sec.1639 (aXl), ALS' predecessor was required to make certain disclosures to the Plaintiff which is to be made conspicuously and in writing no later than three (3) days prior to the closing.

94. To the extent  ALS accedes to predecessor  rights  it knew  or should have known of multiple violations of HOEPA, Plaintiff have a legal right to rescind the consumer credit transaction the subject of this action pursuant to 15 USC sec. 1635.

95. ALS further violated HOEPA by failing to make additional disclosures, including but not limited to Plaintiff not receiving the required disclosure of the right to rescind the transaction; the failure of ALS to provide an accurate TILA disclosure; and the amount financed being understated.

96. Based on HOEPA violations, ALS is liable to the Plaintiff for the following, which Plaintiff may demand as relief: (a) rescission of the mortgage loan transactions; (b)

termination of the mortgage and security interest in the property the subject of the mortgage loan documents created in the transaction; (c) return of any money or property paid by the Plaintiff including all payments made in connection with the transactions; (d) an amount of money equal to twice the finance charge in connection with the transactions; (e) relinquishment of the right to retain any proceeds; and (f) actual damages in an amount to be determined at trial, including attorneys' fees.:

**THIRTEENTH CLAIM--VIOLATION OF FAIR CREDIT REPORTING ACT**

97. Plaintiff incorporates and realleges paragraphs1-99.

98. At all times material, Defendants qualified as a provider of information to the Credit Reporting Agencies, including but not limited to Experian, Equifax, and TransUnion, under the Federal Fair Credit Reporting Act.

99. Defendants wrongfully, improperly, and illegally reported negative information as to the Plaintiff to one or more Credit Reporting Agencies, resulting in Plaintiff having negative information on his credit reports and the lowering of his FICO scores.

100.     The negative information included but was not limited to an excessive amount of interest into which Plaintiff was tricked and deceived into signing. Notwithstanding the above, Plaintiff has paid each and every payment until the issue of misapplication arose.

101.     Pursuant to 15 USC sec. 1681(s)(2)(b), Plaintiff are entitled to maintain a private cause of action against ALS for an award of damages in an amount to be proven at the time of trial for all violations of the Fair Credit Reporting Act which caused actual damages to Plaintiff, including emotional distress and humiliation.

102.     Plaintiff is entitled to recover damages from ALS for negligent non-compliance with the Fair Credit Reporting Act pursuant to 15 USC sec. 1681(0). Plaintiff is also

entitled to an award of punitive damages against Defendants for their willful noncompliance with the Fair Credit Reporting Act pursuant to 15USC sec. 1681 in an amount to be proven at time of trial.

**FOURTEENTH CLAIM--BREACH OF CONTRACT**

103.     Plaintiff incorporates and realleges paragraphs1-101.

104.     Such actions and inactions breached ALS' express and implied obligations under its contractual obligations to Plaintiff all to his damage.

**FIFTENTH CLAIM-- MATERIAL MISREPRESENTATIONS**

105.      Plaintiff incorporates and realleges paragraphs1-103.

106.     Defendants knowingly and intentionally concealed material information from Plaintiff which is required by Federal Statutes and Regulations to be disclosed to the Plaintiff both before and at the closing.

107.     Defendants also misrepresented material information to the Plaintiff with full knowledge by Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

108.     Under the circumstances, the material omissions and material misrepresentations of the Defendants were malicious. Plaintiff reasonably relied upon the representations which ALS knew or should have known about in agreeing to execute and perform under the mortgage loan documents.

109.     Had plaintiff known of the falsity of the representations, Plaintiff would not have entered into the transactions the subject of this action. As a direct and proximate cause of ALS' material omissions and material misrepresentations, Plaintiff has suffered damages.

## SIXTEENTH CLAIM--NEGLIGENT MISREPRESENTATION

110.     Plaintiff incorporates and realleges paragraphs1-108.

111.     Defendants negligently took the actions and inaction concealed material information from Plaintiff which is required by Federal Statutes and Regulations to be disclosed to the Plaintiff both before and at the closing.

112.     Such actions and actions were negligent or grossly negligent to plaintiff's damage.

## SEVENTEENTH CLAIM--INTENTIONAL MISREPRESENTATION

113.     Plaintiff incorporates and realleges paragraphs1-120.

114.      Defendants also misrepresented material information to the Plaintiff with full knowledge their affirmative representations were false at the time the representations were made.

115.      Under the circumstances, the material omissions and material misrepresentations of the Defendants were malicious. Plaintiff reasonably relied upon the representations of Sham Lender which ALS knew or should have known, in agreeing to execute and make payments under the Note and Deed of Trust.

116.     Had Plaintiff known of the falsity of the representations, plaintiff would not have entered into or would have earlier challenged any alleged obligation to perform under the documents. As a direct and proximate cause of the Defendants' material omissions and material misrepresentations, Plaintiff has suffered damages.

117.     Under the totality of the circumstances, the Defendants' actions were willful, wanton, intentional, and with a callous and reckless disregard for the rights of the Plaintiff justifying an award of actual and exemplary punitive damages to serve as a deterrent.

**EIGHTEENTH CLAIM--CIVIL CONSPIRACY**

118.     Plaintiff incorporates and realleges paragraphs1-116.

119.     In connection with the application for and consummation of the mortgage loan the subject of this action, Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance oft he conspiracy to defraud the plaintiff

120.     ALS and its predecessors and Sham Lender agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the plaintiff

121.     The actions of the Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of plaintiff

122.     As a direct and proximate result of the actions of the Defendants in combination resulting in fraud, breaches of contract and fiduciary duties.  Plaintiff has suffered damages. Plaintiff thus demands an award of actual, compensatory, and punitive damages.

123.     Defendants also utilized amounts known to the Defendants to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure. Defendants' violations were all material in nature under the Truth-In-Lending Act.

**NINETEENTH CLAIM--VIOLATION OF THE FEDERAL RICO AND COCCA**

124.     Plaintiff incorporates paragraphs 1-121.

125.     Defendants have filed at least a thousand foreclosure actions in state and federal courts in Colorado alone, including this one against the plaintiff, under false pretenses falsely alleging to be the owner or holder or both as in the "foreclosure" against this Plaintiff.

126.     These filings represent *a pattern of corrupt and illegal activity as defined by Colorado law and federal law* through which Defendants and those abetting them have charged millions in fees, court costs and other expenses against the plaintiff and thousands of similarly situated consumers.

127.     This conspiracy including the subject of this action has existed from date of application to the present, with continuing resulting injuries and damages.

128.     Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiff constitutes an "enterprise", with the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiff through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents. .

129.     Each of the Defendants is an "enterprise Defendant". As a direct and proximate result of the actions of the Defendants, Plaintiff has and continued to suffer damages.

130.     It also constitutes an offense against justice and public administration in violation of Colorado law and therefore constitutes a pattern of corrupt activity as required to maintain an action for violation of the Colorado Organized Crime Control Act ("COCCA").

**TWENTIETH CLAIM--RICO VIOLATIONS BY COUNSEL**

131.     Plaintiff incorporates paragraphs 1-128.

132.     Dale & Decker represent ALS in hundreds of lawsuits in Colorado and have independent obligations to the Courts in Colorado and to Plaintiff not to engage in such misconduct but have nevertheless served as a vehicle through which ALS has perpetrated its deceptive and unauthorized conduct.

133.     Mr. Siler in his capacity as AL S in house counsel and private attorney for AL S and Dale & Decker aided and abetted Dale & Decker's misconduct by orchestrating documents to create the illusion a chain of title to AL S.

134.     These filings represent *a pattern of corrupt and illegal activity as defined by Colorado law* through which Defendants have charged millions in fees, court costs and other expenses against the plaintiff and potential of other similarly situated class members' property.

**TWENTY FIRST CLAIM--COMPLAINT TO QUIET TITLE TO REAL PROPERTY**

135.     Plaintiff incorporates paragraphs 1-133.

136.     The real party in interest on the lender side, if any, may be the owner of the asset backed security issued by the MERS, the insurer through some claim of equitable interest, or the Federal government through the United States Department of the Treasury or the Federal Reserve. The security is a "securitized" bond deriving its value from the underlying mortgages of which the subject mortgage is one.

137.     Thus Plaintiff is entitled to quiet title against ALS and those claiming through it, clearing title of the purported subject mortgage encumbrance.

138.     Plaintiff therefore seeks a declaration that the title to the subject property is vested in plaintiff alone and that ALS, those cooperating, and those claiming through them be declared to have no estate, right, title or interest in the subject property and that said defendants and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to plaintiff herein.

## REQUEST FOR RELIEF

WHEREFORE, in addition to the request for emergency injunctive relief to enjoin or vacate the Scheduled Sale requested in the accompanying motion,  Plaintiff further seeks exemplary damages for deliberate willful and wanton conduct and misrepresentation in the foreclosure attempt and damage as prescribed for violations of the statutes including treble damages as provided by RICO, actual damages for other breaches and torts, damages for overpayment of the loan, damages to be determined at trial for slander of title, defamation and for punitive damages all in an amount not yet quantified but to be proven at trial and such other amounts to be proven at trial, and for costs and attorneys' fees; that the Court find that the transactions the subject of this action are illegal and are deemed void; that the foreclosure which was instituted be deemed and declared illegal and void and that further proceedings in connection with the foreclosure be permanently enjoined; for declaratory relief that title to the Property is vested solely in Plaintiff free from any liens by ALS, or those claiming through them and for any other and further relief which is just and proper.

Plaintiff demands a jury trial.

RANDY S. GOLDENHERSH

Submitted August  13, 2010


_____/S/_ _Signature on file_____

Defendant's address**:**                  Randy S. Goldenhersh, *pro se*
                                           6500 E. Prentice Ave**.**
6500 E. Prentice Avenue                    Greenwood Village, CO 80111
Greenwood Village, CO 80111                 Tel: 303-324-1868

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 13, 2010 true and correct copies of PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND MEMORANDUM IN SUPPORT AND COMPLAINT are being served on Defendants and the Public Trustee by electronic mail or facsimile

     /S/  Randy S, Goldenhersh

Aurora Loan Services LLC
C/O Corporation Service Company
1560 Broadway Ste. 2090
Denver, CO 80202

Jamie Siler, Esq.
410 17th St., Ste.2400
Denver, CO  80202

Aurora Loan Service LLC
10350 Park Meadows Drive
Littleton, CO 80124
C/O Dale & Decker LLC
2 Inverness Drive East, Suite 105
Englewood, CO 80112

Ana Maria Peter-Ruddick, Public Trustee
Arapahoe County
2329 W. Main St., Ste. 100
Littleton, CO 80120

Dale & Decker LLC
2 Inverness Drive East, Suite 105
Englewood, CO 80112

Holly L. Decker
Dale & Decker LLC
2 Inverness Drive East, Suite 105
Englewood, CO 80112

Toni M.N. Dale
Dale & Decker LLC
2 Inverness Drive East, Suite 105
Englewood, CO 80112

—

_____

Toni M. N. Dale
Dale & Decker LLC
2 Inverness Drive East, Suite 105
Englewood, CO 80112

Holly L. Decker
Dale & Decker LLC
2 Inverness Drive East, Suite 105
Englewood, CO 80112

Dale & Decker LLC
2 Inverness Drive East, Suite 105
Englewood, CO 80112

_____